**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 28, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES ECKMAN,

Plaintiff-Appellant,

v.

SUPERIOR INDUSTRIES
INTERNATIONAL,

Defendant-Appellee.

No. 07-3238
(D.C. No. 05-CV-2318-DJW)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

In this diversity action, James Eckman appeals the district court's grant of

summary judgment in favor of his former employer, Superior Industries

International (Superior), on his Kansas common law retaliatory discharge claim.

Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Eckman's version of the facts and the uncontroverted evidence proffered by Superior provides the following abbreviated factual scenario. In July 2000, Mr. Eckman began working for Superior. In February 2002, he was promoted to team leader in Superior's fettling department.[1]

On March 1 or 2, 2005, Mr. Eckman called Superior's Human Resources Manager, Leo Sievert, to express concern that the fettling department did not have any emergency safety lighting. Mr. Sievert assured him that he would relay their conversation to Superior's Safety Supervisor, Tim Rakestraw. An hour later, Mr. Eckman called Mr. Sievert back and informed him that, according to a representative at the Pittsburgh City Codes Enforcement Department (with whom he had just spoken), the fettling department needed at least two emergency safety lighting units.

Later that day, Mr. Sievert notified Mr. Rakestraw of Mr. Eckman's concern. When Mr. Rakestraw went to the fettling department to discuss the matter, he allegedly observed Mr. Eckman not properly "locked out" of the robot cell in which he was working.[2] In order to prevent injury, employees are required

---

[1]    "Superior . . . . is one of the world's largest OEM [original equipment manufacturer] suppliers of cast and forged aluminum road wheels for the automotive industry."  Superior Indus. Int'l, Inc., http://www.superiorindustries.com/about/main.aspx (last visited Mar. 27, 2008).

[2]    Each robot cell, which is like a cage, contains two machines and a robot.

(continued...)

to "lock out" or terminate the energy supplied to a cell before entering it. Mr. Eckman maintains that he was locked out. And he counters that Mr. Rakestraw did not confront him about his alleged safety violation until five to ten minutes after he had exited the cell, when it was too late for him to prove the falsity of the allegation.

Thereafter, Mr. Rakestraw called Mr. Eckman into a meeting with two other Superior employees and advised him that he was being suspended for three days, without pay, as discipline for the safety violation. Mr. Eckman repeatedly denied the allegation and "became angry, upset, cursed, . . . refused to sign [the] disciplinary [f]orm," and walked out of the meeting. Aplt. Reply Br. at 7. Mr. Rakeshaw called after him, asking that he relinquish his company identification card. Mr. Eckman tossed it at Mr. Rakestraw, striking him in the shoulder.

On March 7, 2005, the day before Mr. Eckman was scheduled to return to work from his suspension, he called Mr. Sievert, who informed him that an investigation of his behavior during the suspension meeting was being conducted. On March 8, Mr. Sievert called Mr. Eckman and told him he was being terminated for his actions during the suspension meeting: insubordination, mistreatment of a

---

[2](...continued)
R. Doc. 75, Eckman Deposition at 10. The robot picks up a wheel off a conveyer, puts it in a fettling machine, and once it is done fettling the wheel, takes the wheel back out and places it onto a conveyer. *Id.*, Rakestraw Deposition at 39.

fellow employee, and behaving in an argumentative manner. Mr. Eckman stated that he was properly locked out at all times. Mr. Sievert responded that he was not being terminated for the safety violation but for his inappropriate behavior at the suspension meeting.

Mr. Eckman sued Superior in federal district court contending Superior discharged him in retaliation for contacting the Pittsburgh City Codes Enforcement Department (that is, for "blowing the whistle" on Superior). The district court concluded that Mr. Eckman was able to establish a prima facie case of retaliatory discharge; Superior met its burden of articulating a legitimate, non-retaliatory reason for discharging Mr. Eckman (his conduct during the suspension meeting); but Mr. Eckman failed to assert specific facts establishing a triable issue as to whether Superior's reason for discharge was pretextual. As such, the district court granted Superior's motion for summary judgment. Mr. Eckman then filed a Fed. R. Civ. P. 59(e) motion to alter or amend judgment. The district court denied the motion, holding that Mr. Eckman had "failed to demonstrate an intervening change in the controlling law, new evidence previously unavailable, or the need to correct clear error or prevent manifest injustice." R. Doc. 99 at 3. Mr. Eckman appeals.

## ANALYSIS

This diversity action is governed by Kansas's substantive law, "but we are governed by federal law in determining the propriety of the district court's grant

of summary judgment." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001). Accordingly, "[w]e review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.
>
> Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is genuine; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Simms*, 165 F.3d at 1326 (citations, internal quotation marks, and brackets omitted).

"Kansas follows the common-law employment-at-will doctrine, which allows employers to terminate employees for good cause, for no cause, or even for the wrong cause. To prevail on a retaliatory discharge claim, an employee

must demonstrate that he or she falls within one of the exceptions to the employment-at-will doctrine." *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 821 (Kan. 2003). One exception is "termination for whistleblowing." *Id.* (citing *Palmer v. Brown*, 752 P.2d 685, 689-90 (Kan. 1988)).

Because retaliatory discharge cases are rarely proven by direct evidence, Kansas courts have adopted a three stage burden-shifting approach for analyzing such claims. *See Goodman*, 78 P.3d at 821. At the first stage, the employee must establish a prima facie case. *Id.* To do so, he has the burden of proving

> "'[A] reasonably prudent person would have concluded the . . . employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare; the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee; and the employee was discharged in retaliation for making the report.'"

*Id.* (quoting *Palmer*, 752 P.2d at 690). Once the employee makes a prima facie case, then, at the second stage, "the employer . . . bears the burden of producing evidence that the employee was terminated for a legitimate nondiscriminatory reason. If that takes place, [then, at the third stage,] the burden . . . shifts back to the employee to produce evidence that the employer's motives were pretextual." *Goodman*, 78 P.3d at 821.

On appeal, Mr. Eckman, whose pro se appellate filings we liberally construe, *Cummings v. Evans*, 161 F.3d 610, 613 (10th Cir. 1998), first takes issue with the district court's conclusion that he failed to demonstrate pretext. In

support of this position he asserts that Superior's explanation was pretextual "due to the direct causual [sic] connection between the Defendant's retaliatory conduct and Plaintiff's reaction to the aforementioned conduct." Aplt. Opening Br. at 7. Thus, as best we can discern, his argument is that Superior's explanation was pretextual because Superior falsely alleged that he was not locked out, thereby provoking him to behave inappropriately during the suspension meeting. But whether the suspension was unjust is beside the point. To avoid summary judgment, he "must assert specific facts establishing a triable issue as to whether [Superior's] reason for discharge [was] a mere cover-up or pretext for retaliatory discharge." *Bracken v. Dixon Indus., Inc.*, 38 P.3d 679, 682 (Kan. 2002). Mr. Eckman fails to do so. He offers no evidence or facts that show that he was terminated for any reason other than because of his inappropriate behavior at the suspension meeting. *See Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002). Indeed, he not only admits that he lost his temper and cursed, but he also admits that such behavior would generally be grounds for termination. R. Doc. 75, Eckman Deposition at 61, 63.[3]

---

[3]    To the extent that Mr. Eckman argues that the district court erroneously granted Superior summary judgment because he established a prima facie case of retaliatory discharge, his argument is without merit. *See* Aplt. Opening Br. at 4, 10-11. He must do more than make out a prima facie case. He must "produce evidence that [Superior's] motives were pretextual." *Goodman*, 78 P.3d at 821.

Next, Mr. Eckman asserts that the district court erroneously denied his Fed. R. Civ. P. 59(e) motion to alter or amend judgment because "Plaintiff did not receive two or more of the Defendant's filings." Aplt. Opening Br. at 14. Superior counters that

> to the best of their belief all copies of pleadings and filings have been submitted via first class mail to Eckman. Further, he has been notified by the District Court via mail of all filings . . . and Defendant was not made aware in a timely basis of this issue or Defendant would have provided additional copies to Eckman.

Aplee. Br. at 5-6.

We review denial of a Rule 59(e) motion for abuse of discretion. *See Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Because Mr. Eckman's argument was not based on newly discovered law or facts and does not implicate manifest injustice or clear error, we hold that the district court did not abuse its discretion in denying this motion. *See id.*

Mr. Eckman also challenges the district court's award of costs to Superior, arguing that the award was erroneous because he "did not file or litigate this action out of spite, malice, or jealousy, nor was this a frivolous lawsuit against Defendant." Aplt. Opening Br. at 17. But our review of the district court docket

-8-

sheet reveals that the district court has not yet ruled on the bill of costs Superior filed pursuant to Fed. R. Civ. P. 54(d)(1), but rather has stayed the matter pending appeal. Because the district court has neither granted nor denied Superior's bill of costs, the issue is not ripe for review. *See id.* ("[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . .").

Finally, we decline to consider the handful of issues plaintiff raises for the first time on appeal in his reply brief. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) (observing that appellant's pro se status does not excuse him from "comply[ing] with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.").

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge

-9-